# UNITED STATES DISTRICT COURT
for the
Middle District of North Carolina

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* ) Case No. 19mJ333-1
THE PREMISES LOCATED AT 509 FARM HOUSE )
LANE, DURHAM, NORTH CAROLINA 27703 )
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
THE PREMISES LOCATED AT 509 FARM HOUSE LANE, DURHAM, NORTH CAROLINA 27703, as described in the attachment A of the Affidavit (incorporated by reference)

located in the _____Middle_____ District of _____North Carolina_____ , there is now concealed *(identify the person or describe the property to be seized)*:
Evidence of violations of 21 U.S.C. §§ 841(a)(1) and 846, to wit: Possession with the Intent to Distribute Heroin and Conspiracy to Possess with the Intent to Distribute Heroin, as described in the attachment B of the Affidavit (incorporated by reference)

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Distribution and Poss. with Intent to Distribute Controlled Substances |
| 21 U.S.C. § 846 | Conspiracy to Distrib. and Poss. with Intent to Distribute Controlled Substances |

The application is based on these facts:
See attached affidavit of FBI Task Force Officer Timothy Thomas

☐ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Task Force Officer Timothy Thomas, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 10/2/19 8:50 AM

*Judge's signature*

City and state: Durham, North Carolina           Joe L. Webster, U.S. Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF ) <br> THE PREMISES LOCATED AT ) <br> 509 FARM HOUSE LANE ) <br> DURHAM, NORTH CAROLINA 27703 ) | Case No. 1:19MJ 333-1 |

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

Timothy Thomas, Task Force Officer, Federal Bureau of Investigation (FBI), Charlotte Division (CE), Raleigh-Durham Resident Agency, Cary, North Carolina, being duly sworn, states the following:

## INTRODUCTION

1. I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations and to make arrests for offenses enumerated in Title 18 U.S.C. § 2516.

2. I am a Task Force Officer with the Federal Bureau of Investigation (FBI) and have been since 2014, I am employed by the City of Durham Police Department and have been since 2003. My duties include investigations into the sale of illegal controlled substances, gang activity, kidnappings, and bank robberies. I have participated in numerous investigations of the sale and possession of illegal controlled substances. I have received in-service training in drug identification and packaging, as well as extensive training in law enforcement procedures. I have attended numerous courses and seminars dealing with gangs and illegal narcotics. I am familiar with the customary practices, procedures, terminology, and tactics used by persons engaged in the business of manufacturing and selling illegal controlled substances in this area and elsewhere. I

1

have attended and completed training in Police Law Institute, Drug Interdiction, and Anti-Gang Training. I have been involved in numerous drug arrests, search warrants, and investigations while performing my duties as a sworn law enforcement officer and have participated in numerous investigations of crimes such as murder, robbery, sex offenses, burglary, larceny, driving while intoxicated, traffic accidents, and other violations of North Carolina General Statutes and the United States Criminal Code.

3. Through instruction and my participation in investigations, I have become familiar with the manner in which gang members and narcotics traffickers conduct their illegal business, and the methods, language, and terms that they use to disguise conversations about their gang and narcotics activities. Additionally, I have become familiar with gang members' methods of operation, including gang organizational structure, their methods of violence, their distribution, storage, and transportation of narcotics, and how they obtain and transport firearms. Through my experience and training, I have learned that gang members and narcotics traffickers frequently use cellular telephones to further their illegal activities by, among other things, remaining in constant or ready communication with one another without restricting either party to a particular location at which they might be subject to physical surveillance by law enforcement authorities. I also have learned that gang members and narcotics traffickers rarely refer to heroin, cocaine, cocaine base (also known as "crack"), phencyclidine (PCP), or other illegal drugs expressly by name. Instead, to conceal the true nature of their illegal activities and to thwart detection by law enforcement, narcotics traffickers routinely refer to drugs, drug quantities, and drug prices by using seemingly innocuous words or phrases. I also know that gang members and drug traffickers frequently have access to several cellular telephones and that they periodically use newly-acquired cellular telephones, all in an effort to avoid detection and to avert law enforcement efforts. I also know

that gang members and drug traffickers communicate via text message to discuss types, quantities, and prices of narcotics, as well as to discuss meeting locations, all in an effort to elude detection and to impede the efforts of law enforcement. I also know gang members to maintain documents, both physical and digital, on their persons and/or in their residences. These documents often refer to gang knowledge, history, rules, and information provided by national-level gang leadership. These documents are often hidden inside of legitimate documents, or written in code, to thwart law enforcement attempts to glean any intelligence concerning the criminal enterprise, its rules, or its membership. Finally, I know that gang members and drug traffickers often keep firearms in their residences and/or on their persons to protect their narcotics stash and related illicit proceeds.

4. This affidavit is made in support of an application for a warrant to search the premises described as 509 Farm House Lane, Durham, North Carolina. This affidavit is based upon information I have gained through this investigation, as well as information from other law enforcement officers and individuals associated with this investigation. I have set forth facts that I believe are necessary to establish probable cause to believe that evidence of violations of Title 21, United States Code, Sections 841 (possession with intent to distribute heroin) and 846 (conspiracy to possess with intent to distribute heroin) are stored within the above-mentioned premises located at 509 Farm House Lane, Durham, North Carolina.

### Investigation into Kevin Bullock, aka "Half"

5. The RDSSTF is currently investigating the violent criminal enterprise (gang) known as the Eight Trey Gangster Crips (ETG Crips), which is responsible for a significant portion of the violent crime and drug distribution in the Durham area.

6. The Crips are a violent street gang that was initially formed in Los Angeles, California in the late 1960s by Raymond Washington and Stanley Williams. There are multiple subsets of

3

the Crips that are, for the most part, associated with the two major branches: ETG and Rollin' 60's. The ETG is the largest group within central North Carolina. Anthony Nesmith has been identified as the individual who recruited inner city youth in Durham to the ETG set. This group loosely follows the rules, regulations, and philosophy espoused by Crips leaders in California.

7. The ETG Crips have had a longstanding feud with the Bloods street gang, as well as internal conflicts among Crip subsets. Many Durham neighborhoods are characterized as "Blood" or "Crip" and some are affiliated with both gangs. The Liberty Street public housing complex has been traditionally Crip. The McDougald Terrace public housing complex has been traditionally Blood; however, with the recent arrests of high-ranking Blood gang leaders by the FBI, the Crips have taken part of this territory. There are reports of between 500 and 600 Crip gang members in the City of Durham at this time and many more in the surrounding area.

8. The RDSSTF's investigation of the ETG began in the summer of 2017 in Durham, North Carolina. Investigators determined that the ETG was heavily involved in drug distribution and armed robberies in the Durham area. Additionally, multiple sets of ETG Crips are involved in extremely violent street conflicts with other Crips sets and Bloods in Durham. Large-scale arrests and convictions of rival Bloods gang members by the RDSSTF has provided an opportunity for the ETG to expand in Durham.

9. The RDSSTF began an investigation in early 2019 into the heroin trafficking activities of KEVIN BULLOCK, aka "HALF." Through the use of cooperating witnesses, cooperating defendants, and confidential informants, the RDSSTF determined that BULLOCK was a mid to high-level supplier of heroin to individuals primarily in the Durham area. Additionally, the investigation revealed that BULLOCK was also buying and selling illicit firearms. BULLOCK is not a validated ETG Crip gang member but is an associate of such members.

10. On August 9, 2019, the Honorable Terrence W. Boyle, Chief United States District Judge for the Eastern District of North Carolina, authorized the interception of wire and electronic communications to and from a telephone with the number (919) 892-0374 (TT1), a phone known to be used by KEVIN BULLOCK.

11. On September 6, 2019, the Honorable Terrence W. Boyle, Chief United States District Judge for the Eastern District of North Carolina, authorized the interception of wire and electronic communications to and from a telephone with the number (919) 638-3854 (TT2), a phone also known to be used by KEVIN BULLOCK.

12. During the course of the investigation into BULLOCK's activities, utilizing the above-mentioned court-authorized intercepts (wire and electronic), agents have determined that BULLOCK, along with others, have distributed, and continued to distribute, large quantities of heroin in the Durham area. Additionally, this investigation has confirmed that BULLOCK is involved in the buying and selling of illicit firearms. BULLOCK is a convicted felon, currently on federal supervised release, and is prohibited from buying, selling, or in any way possessing firearms.

13. Investigators have successfully conducted multiple surveillance operations in conjunction with the monitoring of court-authorized wire and electronic communications of BULLOCK. Investigators have been able, through these investigative techniques, to determine how and where Bullock sells heroin and is collecting the illicit proceeds.

14. Investigators have determined that BULLOCK, in an attempt to minimize his exposure to possible criminal prosecution, has utilized his cousin, MARKEYO MCLENDON aka "SHORT," to transport and sell his heroin. BULLOCK coordinates that sales of heroin and then further coordinates with MCLENDON to complete the deal. BULLOCK also minimizes his

5

exposure to possible criminal prosecution by utilizing MCLENDON in the same manner for the purchase of illicit firearms.

### 509 Farm House Lane, Durham, North Carolina (SUBJECT PREMISES)

15. Based on the above-referenced investigation, the RDSSTF has determined that CORRY REAMS was part of the heroin distribution conspiracy with MCLENDON, BULLOCK, and DEZMOND STONE.[1] Investigators have determined through physical surveillance and law enforcement databases that REAMS's primary residence is 509 Farm House Lane, Durham, North Carolina. Specifically, this address is listed on REAMS's North Carolina Driver's License and voter registration. Further, REAMS has utility services in his name for this address.

16. On August 16, 2019, investigators were conducting surveillance on KEVIN BULLOCK in the Phoenix Crossing shopping center located at 908 Fayetteville Street in Durham. Investigators saw BULLOCK and REAMS in the parking lot together. BULLOCK and REAMS then got into their respective cars and left the area. REAMS left in a 1998 Mercury Grand Marquis bearing North Carolina plates CEL9140. This vehicle is registered to Angela Saralynn Ha, who is also documented as living at 509 Farm House Lane, Durham, North Carolina. Durham Police Department reporting identifies Ha as REAMS's girlfriend.

17. On September 14, 2019 (Session #7839 TT1), investigators intercepted a call between MCLENDON and BULLOCK discussing REAMS. In the beginning of the call, BULLOCK discusses "Corry" wanting him to come to the bar. This corresponds to calls between BULLOCK and REAMS wherein they discussed meeting up in Greensboro. BULLOCK and MCLENDON then had the following exchange:

BULLOCK: Bro so so I got a question for you bro so so how much more do do he owe you out of what you got

---

[1] Through the course of the investigation, investigators determined that STONE was one of BULLOCK's source of supply.

6

| MCLENDON: | Well well well what tab did |
|---|---|
| BULLOCK: | cause the tab he telling me the tab he telling me it it sounds just like my tab |
| … | |
| MCLENDON: | Yea I had got that some from him that Saturday but, I didn't get uh the little shipment that last 28[2] that we had gave him. That was it. |

BULLOCK and MCLENDON continued to discuss the money owed and determined that REAMS owed around $1250. On September 15, 2019, investigators intercepted several phone calls between BULLOCK (TT2) and REAMS (919-599-2202). The substance of these calls indicated that REAMS was selling BULLOCK an unknown quantity of pills, including 10 mg Oxycontin pills.

18. Based on calls indicating that BULLOCK and REAMS were meeting at Skewers restaurant located at 1013 West Main Street, Durham, North Carolina to facilitate the pill sale, investigators conducted surveillance there. Investigators saw REAMS arrive in the same Mercury Grand Marquis and enter the restaurant.

19. On September 15, 2019, investigators arrested KEVIN BULLOCK, MARKEYO MCLENDON, and QUENTIN YOUNG in the parking lot of 519 East Main Street, Durham, North Carolina. Based on wire intercepts between BULLOCK and MCLENDON during the course of the wiretap, investigators determined that MCLENDON stores BULLOCK's heroin at his residence at 519 East Main Street, Apartment 611, Durham, North Carolina. They then executed a federal search warrant on MCLENDON's residence. Pursuant to this warrant, investigators seized approximately 106 grams of heroin (that field-tested positive) and two firearms.

20. On September 19, 2019, investigators executed a search warrant at 2020 Aventon Lane, Morrisville, North Carolina, the residence of DEZMOND STONE. STONE was detained by investigators returning to his residence. Inside of STONE's residence, investigators recovered

---

[2] Investigators know from the common language that BULLOCK and MCLENDON used during the course of the wiretap that "28" refers to 28 grams, or one ounce, of heroin.

7

approximately 1.8 kilograms of heroin, 2.4 kilograms of cocaine, and over $50,000 in cash. Investigators also seized numerous cell phone, drug ledgers, firearms, and drug packaging materials from the residence.

21. STONE was transported to the FBI office to be interviewed. After STONE was Mirandized, he provided investigators with the pattern to unlock his Alcatel phone bearing IMEI 015163005570741. STONE described this phone as the only one with drug related contacts in it. Investigators noticed in the phone that the telephone number "919-599-2202"[3] was listed as "Lil C," and that there were three text messages between "Lil C" and STONE dated September 18, 2019 as follows:

Lil C:   yo

STONE:   yo

Lil C:   was seeing was u gone dump that number[4]

22. Investigators reviewed a drug ledger seized from STONE's kitchen counter and discovered that it contained up-to-date amounts drug debt amounts. Investigators were able to determine this because debt amounts for "Half" listed in the ledger corresponded to payments BULLOCK made to STONE during the course of the wire. This same ledger listed "Lil C" as owing $73,400.

23. On September 26, 2019, investigators conducted surveillance on the SUBJECT PREMISES. At approximately 3:00 pm, they saw CORRY REAMS leave through the front door and drive away in the Mercury Grand Marquis investigators had previously seen him driving.

---

[3] Investigators intercepted this same telephone number while monitoring TT2 and confirmed that REAMS was using it.
[4] It is common practice for drug dealers to "dump" or change phone numbers after the arrest of an individual with whom they are associated, as BULLOCK was here.

8

24. Investigators monitored calls that BULLOCK made from the Durham County Jail. On September 18, 2019, BULLOCK called REAMS at 919-599-2202. During the call, BULLOCK and REAMS had the following exchange:

> BULLOCK: I need you to call our mutual friend for me right tell him I'm gonna need some help I gonna have to pay for two lawyer
>
> REAMS: I just talk [sic] to him.
>
> BULLOCK: He mention it
>
> REAMS: He didn't know nothing about it he just got back in town ne had cut his phone off.

Investigators understood that REAMS and BULLOCK to be referring to STONE. During the execution of the search warrant of STONE's residence and his subsequent address, investigators noticed that STONE had luggage showing he returned from Miami, Florida on September 18, 2019. In STONE's "drug" phone, there was record of a call between Lil C and STONE at 5:11 pm, just prior to his conversation with BULLOCK.

25. One of BULLOCK's female associates advised him, on a September 21, 2019 jail call, that REAMS had changed his phone number to 919-699-5579. On September 21, 2019, BULLOCK called REAMS on this number and they discussed STONE being charged. REAMS then said, "He reaching out to me for change already, my baby momma gave my number out after it changed it." After this call was cut off, BULLOCK called REAMS again. BULLOCK told REAMS that he was going to have to change his phone number again.

26. A FBI Confidential Human Source (CHS) that had previously been deemed to be credible and reliable was in contact with REAMS after STONE's arrest. REAMS, within the last week, told the CHS that he [REAMS] "has Dez's money," referring to STONE (STONE's first name is DEZMOND).

## CONCLUSION

27. Based on the foregoing facts, I submit that there is an ongoing drug distribution conspiracy and that CORRY REAMS, as a part of that conspiracy, is currently using the SUBJECT PREMISES to store heroin and illicit proceeds from the sale of heroin. Based on training, knowledge, and experience, I know that drug dealers will often maintain the necessary paraphernalia, such as scales, cutting agents (adulterants), and packaging materials, as well as firearms intended to protect the narcotics stash and related illicit proceeds, and records related to those transactions, inside of the same residence. I submit that there is probable cause to believe that the SUBJECT PREMISES contains illegal narcotics, that being heroin, a Schedule I controlled substance, the associated drug paraphernalia, associated records, ledgers, illicit proceeds, and firearms, that provide evidence of the above-described criminal conspiracy.

28. Based on the foregoing facts, I further respectfully submit that there is probable cause to search the SUBJECT PREMISES described in Attachment A to seize evidence, contraband, fruits, and/or instrumentalities of crimes, namely, violations of 21 U.S.C. §§ 841 (possession with intent to distribute heroin) and 846 (conspiracy to possess with intent to distribute heroin).

Timothy Thomas, TFO
Federal Bureau of Investigation
United States Department of Justice

SWORN TO AND SUBSCRIBED before me this 2nd day of October, 2019 8:50 A.M.

Joe L. Webster
United States Magistrate Judge

# ATTACHMENT A
## PREMISES TO BE SEARCHED:

The subject premises, 509 Farm House Lane, Durham, North Carolina, is a single-family home. The residence is a two story building with the first level having a brick facade, and a second level having a grey and beige siding façade. The numbers "509" are vertically displayed on the support column.



11

## ATTACHMENT B

## ITEMS TO BE SEIZED:

Documents and items which provide evidence of violations of 21 U.S.C. §§ 841 and 846, in the form of the following:

a. Any and all Controlled Dangerous Substances, as defined by 21 U.S.C. § 812, and/or items containing CDS residue;

b. Cutting agents/adulterants commonly utilized in the preparation of narcotics;

c. Digital scales;

d. Baggies and other packaging paraphernalia;

e. Blenders and vacuum sealers/food savers;

f. Ledgers or notes associated with the sale of narcotics and collection of associated proceeds;

g. U.S. currency;

h. Jewelry and other valuable items;

i. Firearms, ammunition, and magazines;

j. Cellular telephones;

k. Documents indicating residency;

l. Safes or secured storage containers;

m. Pictures or other documents showing association with known conspirators; and

n. Laptop computers, smartphones, and digital storage devices.